UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANDREW HARRIS | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 14-5163 |
| v. | : | Opinion |
| ERIC J. HOLDER, JR., Attorney General, U.S. Department of Justice, | : | |
| Defendant. | : | |

This matter comes before the Court on motion for summary judgment, pursuant to Fed. R. Civ. P. 56, filed by Defendant Attorney General Eric J. Holder, Jr. The Court has considered the written submissions of the parties and the arguments advanced at the hearing on June 6, 2016. For the reasons stated on the record during the hearing, and those that follow, the motion for summary judgment [Doc. 17] will be granted in favor of Defendant.

I.  Background

Plaintiff Andrew Harris is an African-American landscaping foreman employed by the Federal Bureau of Prisons at the Federal Correctional Institution ("FCI") at Fort Dix, New Jersey. He brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 et seq. Harris complains that the BOP discriminated against him on July 18, 2006 when he was required to supervise outdoor grass mowing duties during excessive heat while two Caucasian landscaping foreman were permitted to work inside.

1

Harris has worked at FCI Fort Dix since 1993 and generally worked between the hours of 6:00 a.m. to 4:30 p.m. in July, 2006. In 2006, Harris was assigned to the West Compound and he reported to general foreman Ron Woodruff. The two men that Harris claims were treated more favorably because of their race, Tom Nicholson and Gary Witham, reported to general foremen Tom Northrup and Scott Ennis, respectively. However, the three general foremen (Woodruff, Northrup, and Ennis) all reported to Bernard "Chip" Moran. As a result of this hierarchy, Plaintiff, Nicholson, and Witham each had a different direct or first-line supervisor, but shared a second-line supervisor in Chip Moran. With the exception of Harris, all of the forenamed persons are white/Caucasian.

On July 18, 2006, Harris claims the heat index was excessive and that he did not have any water on his golf cart. Harris used a golf cart, called a LEEP, to supervise his inmate crew assigned to landscaping and mowing duties. Harris's day started at 6 a.m. and was otherwise normal. However, during his lunch break, he saw his second-line supervisor, Chip Moran and told him: "[W]e are going to discontinue Mowing. It's just way too hot and I'm not feeling well[.] I'm dizzy. My eyes are burning[,] we don't have water out there either, so I already got everything loaded up." Harris Dep., 67-68, 72. Harris claims that Moran directed him to speak to his direct supervisor, Ron Woodruff. Id. at 73-74.

Plaintiff claims that his first-line supervisor, Ron Woodruff, was not impressed with the heat and that he told Plaintiff that he was going to call the safety office to confirm that the Fort Dix Army Base did not shut down outside operations because of the heat. Id. at 79-80; EEOC Hearing Transcript (Woodruff) at US 184, US205-US206,

US213,-US214, US228-US229.[1] Harris claims that Woodruff informed him after the phone call that "there's business as usual. Go back to work." Harris Dep. at 79.

Harris again sought permission from Moran to cease mowing operations and told Moran that Woodruff said "well, you got to go back out there." Id. at 83. As a result of Woodruff's direction, Harris claims that he tracked down his inmate crew without eating lunch or drinking any water. Id. at 81-85. Harris returned to his duties and then either "passed out" or became "semi-conscious[.]" Id. 86-87. Emergency personnel was summoned to assist Harris and he was taken to the hospital. Id. at 149-150.

Harris was placed on injury leave, but remained on paid status during his leave. Id. at 114. When he returned to work, Harris remained in the same position with the same duties and schedule. Id. at 116. Harris was not disciplined for the July 18, 2006 incident. Id. He eventually was reassigned as the landscape foreman for the Outside Compound; a transfer he welcomed as more favorable. Id. at 107-109; 117, 135-37.

Harris complains that he was treated less favorably than Witham and Nicholson on July 18, 2006 because they were not asked to perform mowing detail for that day. Id. at 21; Vassallo Dec., Ex. C (Interrogatory Reponses). During the EEOC Hearing, Witham testified that he had his crew mow on July 18, 2006. EEOC Hearing Transcript at US365-US375. However, Harris claims that the actions taken by Woodruff and Moran on July 18, 2006, ignoring his comments about how he was feeling in the heat, were racially motivated. Harris Dep., 121-123. Harris states that he never heard his supervisors make any racially offensive or insensitive remarks and that he cannot recall Moran or Woodruff ever commenting about his race. Id. at 126.

---

[1] Warden Samuels and Chip Moran also testified in the EEPO Hearing that the Fort Dix Army Base had not made an announcement of a heat warning. See EEOC Hearing (Moran) at US249, US257.

Harris's Complaint alleges one Count of racial discrimination under Title VII based on the July 18, 2006 incident.

Defendants have moved for summary judgment.

## II.     Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits

or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the finder of fact.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  Analysis

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  In assessing claims under Title VII and related retaliation claims, courts apply the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973).  Analysis of claims made pursuant to the NJLAD generally follows the analysis of Title VII claims.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).

Thus, to prevail on a Title VII disparate treatment racial discrimination claim, a plaintiff must demonstrate *prima facie* that (1) he is a member of a protected class; (2)

he suffered an adverse action by the defendants; (3) despite being otherwise qualified; and (4) similarly situated persons who are not African- American were treated more favorably.  Hall v. E.I. du Pont Nemours and Co., 586 F. App'x 860, 863 (3d Cir. 2014).

If the plaintiff makes out a *prima facie* case, the burden of production shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action.  See Burton v. Teleflex, 707 F.3d 417, 426 (3d Cir. 2013).  If the defendant establishes a legitimate, nondiscriminatory reason for its actions, the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was a pretext for actual discrimination.  Id.  The plaintiff must show that the defendant's reason is a pretext for discrimination.

Summary judgment is granted in favor of Defendant.  Plaintiff has not identified any evidence demonstrating that he suffered an adverse employment action or demonstrated that he was treated differently than similarly situated employees on July 18, 2006.  As a result, Plaintiff cannot demonstrate a *prima facie* case of discrimination.  Even if Plaintiff could demonstrate a *prima facie* case of discrimination, summary judgment must be granted because Plaintiff fails to put forth any evidence tending to show that Defendant's proffered reason for having Plaintiff supervise mowing detail on July 18, 2006 is a pre text for racial discrimination.

Plaintiff's alleged adverse employment action in this case stems solely from the July 18, 2006 incident, where he was required to supervise mowing detail outdoors during excessive heat causing him to become ill.  Proof that a Title VII plaintiff suffered an adverse employment action is required under step one of the McDonnell Douglas framework.  See Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003).  The Third Circuit defines an adverse employment action as an "action by an employer that is

serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir.2004) (internal quotation marks omitted).  The adverse action must surpass "general unpleasantness that can occur in the workplace[.]" Barnees v. Nationwide Mut. Ins. Co., 598 F.App'x 86, 90 (3d Cir. 2015).  "Termination, failure to promote, and failure to hire all constitute adverse employment actions." Id. (citing 42 U.S.C. § 2000e–2(a)(1) (making it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.")). "Similarly, actions that reduce opportunities for promotion or professional growth can constitute adverse employment actions. Id. (citing de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 21 (2d Cir. 1996) (stating that reduced prestige and opportunity for professional growth, although "quite thin," are sufficient to show adverse employment action at summary judgment)).

      Here, Plaintiff's allegation does not amount to an adverse employment action and Plaintiff fails to address this issue in his brief and he did not identify any evidence or case law during oral argument tending to show that the July 18, 2006 incident qualifies as an adverse employment action. At best, Plaintiff was placed on injury leave, but was paid during leave, and returned from leave to the same position.  In Jones v. Se. Pa. Transp. Auth., 796 F.3d 326 (3d Cir. 2015), the Third Circuit agreed with the majority of other circuits that "placing an employee on paid administrative leave where there is no presumption of termination is not an adverse employment action under the substantive

provision of Title VII." Jones, 796 F.3d at 326 (internal quotations omitted) (citations omitted).

Harris agrees that he was never disciplined and that he eventually received a more favorable placement. Harris Dep., 107-09, 117, 135-37. Harris also agrees that his supervisor Ron Woodruff required him to mow every day; indicating that the July 18, 2006 mowing detail was not a departure from Plaintiff's every-day duties. See id. at 48-51. Requiring Plaintiff to do his assigned duties, even under less than ideal circumstances, does not amount to an adverse employment action. See Jones, 796 F.3d at 326 (citing cases). For all of these reasons, Harris's complaint of a single action does not constitute an adverse employment action and summary judgment is granted.

In addition, even assuming there is an adverse employment action, Plaintiff cannot show that he was treated differently from similarly situated employees because he has not identified proper comparators. The record shows that Plaintiff, Witham, and Nicholson all reported to different first line supervisors. In addition, Plaintiff admits that each of his alleged comparators had the "autonomy to set work assignments, provided they met their weekly performance objectives." Pl. Counter Statement of Material Facts, ¶¶ 16-17. These facts disqualify Witham and Nicholson as comparators. See Carter v. Midway Slots & Simulcast, 511 F. App'x 125, 128 (3d Cir. 2013) (holding that the plaintiff "and his five subordinates were not similarly situated for Title VII purposes because they did not share the same supervisor.") (citing Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) (noting that, in order to show that comparators are "similarly situated," all relevant aspects of employment need to be nearly identical)). As a result, summary judgment must be granted.

8

Finally, even if Plaintiff could establish a *prima facie* case of discrimination, Plaintiff has not put forth any evidence to rebut Defendant's legitimate non-discriminatory reason for requiring Plaintiff to continue with mowing duties on July 18, 2006. Defendant claims that because there was no heat advisory that day and because Plaintiff never told his supervisor that he had other plans for his inmate crew in lieu of the mowing, Woodruff was following the policy of keeping the inmates active. See Harris Dep. at 28-29, 70, 77, 112; EEOC Hearing Transcript (Samuels/Woodruff/Moran) at US155-US156, US163-US164, US171-US172, US181-US184, US205-US206, US213-US214, US228-US229, US262-US263. Other than speculative statements made during oral argument that suggest race must be presumed to be a factor in Defendant's decision to have Plaintiff supervise mowing duties, Plaintiff cannot show on this record that Defendant's non-discriminatory reasons for requiring Harris to mow on July 18, 2006 are a pre-text for racial discrimination. " 'Mere speculation about the possibility of the existence of such facts' does not raise triable issue to defeat motion for summary judgment." Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 514-15 (D.N.J. 2002) (quoting Sterling Nat'l Mortgage Co. v. Mortgage Corner, Inc., 97 F.3d 39, 44 (3d Cir. 1996); see also Dunkin' Donuts Inc. v. Patel, 174 F.Supp.2d 202, 212 (D.N.J. 2001) ("Genuine issues of material fact cannot be raised by speculation and conclusory allegations.").

Plaintiff fails to identify any evidence in the record tending to create a genuine issue of material fact as to whether Defendant's decisions on July 18, 2006 were motivated by race. Plaintiff has not demonstrated a *prima facie* case of discrimination or identified a genuine issue of material fact related to whether Defendant's legitimate, non-discriminatory reasons for requiring Plaintiff to continue with mowing duties on

July 18, 2006 are a pre-text for discrimination.  Accordingly, Defendant's motion for summary judgment will be granted.

An accompanying Order will issue.

Dated: June 13, 2016

s/ Joseph H. Rodriguez<br>
HON. JOSEPH H. RODRIGUEZ,<br>
United States District Judge